IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAMES ISABELL　　　　　　　　*
　　　　　　　　　　　　　　　　*
　　v.　　　　　　　　　　　　　*　　　Civil Case No. JKB-13-0479
　　　　　　　　　　　　　　　　*
COMMISSIONER, SOCIAL SECURITY　*
　　　　　　　　　　　　　　　　*
*************

REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2013-06, the above-referenced case was referred to me to review the parties' cross-motions for summary judgment and to make recommendations pursuant to 28 U.S.C. § 636(b) and Local Rule 301.5(b)(ix). I have considered the parties' motions. ECF Nos. 14, 16. This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). I find that no hearing is necessary. Local R. 105.6 (D. Md. 2011). For the reasons set forth below, I recommend that both motions be denied, and that the case be remanded to the Commissioner for further proceedings in accordance with this Report and Recommendations.

Mr. Isabell applied for Supplemental Security Income on March 17, 2009, initially alleging a disability onset date of January 1, 2007.[1] (Tr. 141-44). His claim was denied initially on August 4, 2009, and on reconsideration on April 16, 2010. (Tr. 82-85, 86-87). An Administrative Law Judge ("ALJ") held a hearing on June 8, 2011, (Tr. 27-77), and subsequently denied benefits to Mr. Isabell in a written opinion dated October 11, 2011. (Tr. 10-26). The Appeals Council declined review, (Tr. 1-6), making the ALJ's decision the final, reviewable decision of the agency.

The ALJ found that Mr. Isabell suffered from the severe impairments of depression,

---

[1] Mr. Isabell later amended his onset date to March 17, 2009. (Tr. 31).

anxiety, right eye blindness, substance abuse, and left flank pain. (Tr. 15). Despite these impairments, the ALJ determined that Mr. Isabell retained the residual functional capacity ("RFC") to:

> perform medium work as defined in 20 CFR 416.967(c) except that he is further limited to: routine, unskilled and repetitive tasks; occasional interaction with the public and co-workers; and, has monocular vision, limiting him to never climbing ladders, ropes or scaffolds, limited depth perception, and avoiding all exposure to hazards.

(Tr. 18). After considering testimony from a vocational expert ("VE"), the ALJ determined alternatively that Mr. Isabell was capable of his past relevant work as a landscaper and warehouse worker, and that there were other jobs existing in significant numbers in the national economy that Mr. Isabell could perform. (Tr. 20-21). Accordingly, the ALJ determined that Mr. Isabell was not disabled. (Tr. 22).

Mr. Isabell disagrees. He raises six primary arguments in support of his appeal: (1) that the ALJ's mental RFC is not supported by substantial evidence; (2) that the ALJ assigned inadequate weight to the opinion of his treating psychiatrist, Dr. Yi; (3) that the ALJ assigned inadequate weight to the opinion of his primary treating physician, Dr. Stewart; (4) that the ALJ provided insufficient analysis to support his physical RFC; (5) that the ALJ erroneously made alternative findings at Steps 4 and 5; and (6) that the ALJ's hypotheticals to the VE were inadequate. Although most of Mr. Isabell's arguments lack merit, I concur that the record contains inadequate medical information regarding Mr. Isabell's mental RFC, particularly in light of the ALJ's assignment of little weight to Dr. Yi's opinion. As a result, I recommend that the case be remanded for further development of the record regarding Mr. Isabell's mental impairments. In so recommending, I express no opinion as to whether the ALJ's ultimate conclusion that Mr. Isabell is not entitled to benefits is correct or incorrect.

Beginning with the unpersuasive arguments, the ALJ's assignment of "little weight" to the opinion of treating physician Dr. Stewart was supported by substantial evidence. Dr. Stewart issued an opinion on March 30, 2011, in which he stated that Mr. Isabell could not sit for six hours out of an eight hour workday, stand/walk for two hours out of an eight hour workday, or lift up to 10 pounds on a sustained basis. (Tr. 322). Dr. Stewart based that assessment of Mr. Isabell's ability to sit, stand, walk, and lift on "poor vision" and "chronic pain." *Id.* It is difficult to fathom how poor vision would affect Mr. Isabell's exertional capacities. Moreover, as the ALJ noted, in Mr. Isabell's own adult function report, he reported no issues with sitting or standing, and the ability to lift up to 30 pounds. (Tr. 211). Mr. Isabell's adult function report was corroborated by the adult function report completed by his mother, who likewise reported that he had no restrictions in sitting, standing, or walking. (Tr. 193). The ALJ also accurately pointed out that Dr. Stewart's treatment notes did not reflect the level of impairment set forth in his opinion, and that he prescribed only Tramadol and Naproxen for Mr. Isabell. (Tr. 19, 325-26). In light of the substantial evidence supporting the ALJ's assignment of little weight, remand is unwarranted.

Moreover, contrary to Mr. Isabell's assertions, the ALJ's physical RFC was adequate. The ALJ's visual restrictions to address Mr. Isabell's monocular vision, specifically the limitation to "never climbing ladders, ropes or scaffolds, limited depth perception, and avoiding all exposure to hazards[,]" (Tr. 18), are consistent with the most recent eye examination in the record, reflecting "a normal left eye." (Tr. 309). The ALJ's three-page RFC analysis also evaluates the other physical limitations suggested by Dr. Stewart, as set forth above. Although he did not specifically address Mr. Isabell's ability to sit, stand, and walk, his determination that Mr. Isabell was capable of a reduced range of medium work contains inherent findings as to those abilities. *See* SSR 83-10, at *6 ("A full range of medium work requires standing or

walking, off and on, for a total of approximately 6 hours in an 8-hour workday . . . As in light work, sitting may occur intermittently during the remaining time."). In fact, the limitation to medium work despite the opinion of Dr. Najar suggesting no exertional limitations, (Tr. 302), evidences the careful weighing of the evidence of record. As a result, there is no error in the physical RFC assessment.

Mr. Isabell next suggests that the ALJ was required to terminate the analysis once he made a "not disabled" finding at Step Four, finding Mr. Isabell capable of performing past relevant work. However, ALJs frequently continue with their analysis and make alternative findings at Steps Four and Five. Although the Fourth Circuit has not addressed the propriety of such alternative findings, other circuits have upheld them. *See e.g., Murrell v. Shalala,* 43 F.3d 1388 (10th Cir. 1994) (alternative dispositions are viewed favorably); *Barton v. Apfel,* No. 98–2484, 1999 WL 314127, at *2 (8th Cir. May 17, 1999) (same). I concur with the analysis in those cases, because the finding at Step Four is not negatively impacted by a like finding of "not disabled" at Step Five. There is therefore no reason to preclude alternative findings, which can ensure that an ALJ's opinion reaches a valid result even if the ALJ commits an error at either Step Four or Five.

Mr. Isabell's final unpersuasive argument is that the hypotheticals posed to the VE were inadequate. First, Mr. Isabell contends that the ALJ's hypotheticals referred to exhibit numbers that do not contain the cited information. Pl. Mot. 32-35. At the beginning of the ALJ's opinion, he notes that "Exhibit 9F, from Community Behavioral Services, is a treatment record for someone other than the claimant and has been removed from the record." (Tr. 13). Although the ALJ does not clarify at what stage in the process the record was removed, it appears that it was removed subsequent to the hearing and the drafting of the ALJ's analysis, and that the remaining exhibits were renumbered accordingly before the current transcript was prepared. *See* Court

4

Transcript Index (noting that Exhibit 9F is now "Office Treatment Records, dated 10/23/2009, from University of Maryland Family Practice.")  The citations in the hypothetical question to Exhibits 12F and 16F refer to what are now exhibits 11F (Dr. Najar physical RFC assessment) and 15F (Dr. Stewart opinion). While Mr. Isabell also speculates that the VE may have responded to the hypothetical questions without actually having the ability to view the exhibits, there is no evidence in the hearing transcript to suggest that the VE did not have access to the records.  The VE asked no clarifying questions, and in fact affirmatively indicated that she was able to see the exhibits. *See, e.g.* (Tr. 74) ("Q. All right.  Okay.  I want you to look at, then, at 12F.  A. Yes, sir.").

Mr. Isabell's other arguments regarding the hypothetical also lack merit.  Although Dr. Najar found no physical limitations, and the ALJ did not modify the hypothetical to impose an exertional restriction, the VE testified that there were light jobs that Mr. Isabell could perform. (Tr. 75).  Because the ALJ addressed all of Mr. Isabell's other restrictions in his hypothetical, the fact that Mr. Isabell may in fact be capable of a greater exertional level than that addressed by the VE does not indicate an inability to perform the light jobs the VE identified.  Moreover, the ALJ's decision to reject the VE's testimony that Mr. Isabell could perform his PRW as a cook, which is a skilled position, simply reflects that the ALJ carefully considered the VE testimony rather than blindly accepting its veracity.  That decision does not invalidate the remainder of the VE's testimony. Finally, Mr. Isabell argues that the ALJ did not include some of the limitations found by various physicians in the hypothetical.  Pl. Mot. 33-34.  However, the ALJ is afforded "great latitude in posing hypothetical questions and is free to accept or reject suggested restrictions so long as there is substantial evidence to support the ultimate question." *Koonce v. Apfel,* No. 98–1144, 1999 WL 7864, at \*5 (4th Cir. Jan. 11, 1999) (*citing Martinez v. Heckler,*

5

807 F.2d 771, 774 (9th Cir. 1986)).  Because, as addressed above, the physical RFC was sufficient, there is no inherent issue with that portion of the hypothetical.

Mr. Isabell succeeds, however, in arguing that the ALJ had insufficient evidence to evaluate his mental RFC, and therefore to form a hypothetical based on that RFC.  The opinion from Mr. Isabell's treating psychiatrist, Dr. Yi, indicates that Dr. Yi completed a psychosocial evaluation on October 25, 2010.  (Tr. 336).  October 25, 2010 is also listed as the "date patient first seen" on Dr. Yi's opinion form.  *Id.*  However, evidence from that psychosocial evaluation appears to be missing from the record.  Instead, the record contains only notes from Mr. Isabell's six subsequent treatment sessions with Dr. Yi's office.  (Tr. 318-19, 331-34).  Because the ALJ did not have Dr. Yi's complete file, his finding that Dr. Yi's opinion was "inconsistent with the claimant's treatment records" is invalid.[2]  (Tr. 16).  Moreover, given the assignment of "little weight" to Dr. Yi's opinion, the ALJ was left without any medical basis for his mental RFC.  Although an ALJ is typically not required to base an RFC on the opinion of a medical expert, this particular case is distinguishable because of the lack of additional evidence (opinion or otherwise) pertaining to Mr. Isabell's mental health.  In light of the record containing only a single medical opinion, which the ALJ does not find persuasive, use of a consultative examiner would provide a further evidentiary basis for an adequate mental RFC assessment.

---

[2] I note that Mr. Isabell had only six subsequent therapy appointments over a seven-month period, including a four-month gap in treatment.  (Tr. 318-19, 331-34).  The infrequency of therapy and conservative nature of the treatment, in addition to some indication of Mr. Isabell's non-compliance with recommended therapy sessions, may have informed the ALJ's evaluation. Nevertheless, because Dr. Yi is the only treating or examining mental health provider in the record, it is important that the ALJ have his complete file for consideration.  The record evidences no effort by the ALJ to obtain the psychosocial evaluation.  Although the regulation has since been modified, at the time of the ALJ's opinion, the agency had a duty to recontact the treating physician to resolve the conflict or ambiguity between the treatment notes and the opinion.  *See* 20 CFR 404.1512(e) (effective June 13, 2011) (modified March 26, 2012 to eliminate the duty to recontact).

CONCLUSION

For the reasons set forth above, I respectfully recommend that:

1. the Court DENY Defendant's Motion for Summary Judgment (ECF No. 14);

2. the Court DENY Plaintiff's Motion for Summary Judgment (ECF No.16); and

3. the Court order the Clerk to REMAND the case to the Commissioner for further proceedings and to CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.

Dated: October 29, 2013 /s/
Stephanie A. Gallagher
United States Magistrate Judge